# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

PAUL EVERETT CUSTER,

    **Plaintiff,**

v.                                             **Civil Action 2:16-cv-788**
                                                  **Chief Judge Edmund A. Sargus, Jr.**
                                                  **Magistrate Judge Jolson**

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Paul Everett Custer, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). In those applications, Plaintiff alleged disability beginning December 15, 2012, due to anxiety, depression, and involuntary muscle spasms/vocal tics. (Tr. 320, PAGEID #: 354). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. FACTUAL AND MEDICAL BACKGROUND

Plaintiff filed this case on August 12, 2016 (Doc. 1), and the Commissioner filed the administrative record on October 24, 2016 (Doc. 7). Plaintiff filed a Statement of Errors on December 22, 2016 (Doc. 10), the Commissioner responded on February 1, 2017 (Doc. 11), and Plaintiff filed a Reply Brief on February 15, 2017 (Doc. 12).

**A. Relevant Medical Evidence**

Joel R. Schwartz, D.O. began treating Plaintiff in 2013, generally seeing him every five months for thirty minutes. (Tr. 57, PAGEID #: 87; Tr. 322, PAGEID #: 356). Dr. Schwartz opined on three occasions that Plaintiff is unable to work due to his condition. The first time was in a November 6, 2013 letter, which states without elaboration that Plaintiff is under his care and unable "to work at this time due to his condition." (Tr. 1602, PAGEID #: 1641). The second time was in a February 10, 2014 letter, which again states without elaboration that Plaintiff is under his care and "unable to work in gainful employment now or any time in the foreseeable future." (Tr. 1166, PAGEID #: 1204). Finally, the third time was in a mental impairment questionnaire completed on January 26, 2015. (Tr. 320, PAGEID #: 354). In the questionnaire, Dr. Schwartz opined that Plaintiff is incapable of working eight hours per day for five days per week (Tr. 329, PAGEID #: 363), based his findings that:

- Plaintiff's diagnoses include posttraumatic stress disorder ("PTSD"); bipolar I; orofacial dyskinesia; and personality disorder, not otherwise specified. (Tr. 322, PAGEID #: 356).

- Plaintiff suffered from mood fluctuations ("depressed and at other end elated, severe agitation"), speech difficulty, and a vocal tic. (Tr. 323, PAGEID #: 357; Tr. 325, PAGEID #: 359); (*see also* Tr. 329, PAGEID #: 363 (noting "mood instability").

- Plaintiff's prognosis was "guarded" because he "has not shown much improvement." (*Id.*).

- Plaintiff's signs and symptoms included decreased energy, mood disturbance, difficulty thinking or concentrating, psychomotor agitation or retardation, persistent disturbances of mood or affect, and bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). (Tr. 324, PAGEID #: 358). However, he indicated that Plaintiff has no side effects from medication. (Tr. 329, PAGEID #: 363).

- Plaintiff has moderate restriction of activities of daily living, marked difficulties

in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 325, PAGEID #: 359). He also noted that Plaintiff had one episode of decompensation of at least two weeks in January 2014. (*Id.*).

- Plaintiff has a medically documented history of chronic organic mental, schizophrenic, etc. or affective disorder of at least two years during that caused more than a minimal limitation of his ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. (Tr. 326, PAGEID #: 360).

- Plaintiff's condition has lasted at least twelve months. (*Id.*).

- Plaintiff has no significant limitations in understanding, memory, and adaptation. Plaintiff has no significant limitations in sustained concentration and persistence, except that he is moderately limited in his ability to work in coordination with or proximity to others without being distracted by them. Plaintiff has marked limitations in social interaction relating to his ability to: interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 327–29, PAGEID #: 361–63).

The record also contains Dr. Schwartz's examination notes. Those notes reflect that Plaintiff told Dr. Schwartz on January 29, 2014, that his medication was helping him "tremendously," he had no difficulties with anxiety, and his sleeping had improved. (Tr. 1326–27, PAGEID #: 1364–65). Plaintiff did, however, report instances "of becoming angry with his girlfriend." (Tr. 1326, PAGEID #: 1364). During that appointment, Dr. Schwartz observed no abnormality in Plaintiff's speech. (Tr. 1327, PAGEID #: 1365).

When Dr. Schwartz examined Plaintiff on May 7, 2014, he denied feeling depressed or anxious or having sleep problems. (Tr. 1435–36, PAGEID #: 1474–75). Dr. Schwartz noted that Plaintiff had some speech difficulty, but it was "not any different than what it had been previously." (Tr. 1436, PAGEID #: 1475). Dr. Schwartz's progress notes from a July 30, 2014

3

appointment provide, *inter alia*, that Plaintiff:

> states that he is doing fairly well since he was last seen. He denies any difficulties with the medication and feels that the medication has been helping him. He denies any problems with nervousness and anxiety. He denies any problems with side effects to medication. We did talk about things he has been doing as apparently he does go to Wal-Mart with his girlfriend and at times becomes anxious at the Wal-Mart but does not leave and is able to get his shopping done. He states he is sleeping better. He continues to show the difficulty with his speech unchanged. He has no depressive symptomology including feelings of helplessness, worthlessness, anhedonia, poor concentration or poor sleep.

(Tr. 1404, PAGEID #: 1443). Dr. Schwartz found repeatedly that Plaintiff had no abnormality in his facial, oral, extremity, or trunk movements. (Tr. 1327–30, PAGEID #: 1365–68 (January 29, 2014); Tr. 1303–1304, PAGEID #: 1341–42 (February 12, 2014); Tr. 1470–72, PAGEID #: 1510–1511 (March 12, 2014); Tr. 1433–34, PAGEID #: 1472–73 (May 7, 2014); Tr. 1402, PAGEID #: 1441 (July 30, 2014)).

**B. Relevant Hearing Testimony**

Administrative Law Judge Edward P. Studzinski (the "ALJ") held a hearing on February 24, 2015. (Tr. 35, PAGEID #: 54). During the hearing, Plaintiff testified that he was treated for depression in December 2012, and the medication prescribed to him caused side effects, including stomach spasms or diaphragm spasms, also referred to as "intractable hiccups," and speech problems. (Tr. 43–44, PAGEID #: 73–74). Plaintiff later changed his medication for the spasms, which provided some relief. (Tr. 46, PAGEID #: 76). Because Plaintiff is a veteran, he received care through the Veteran's Administration ("VA"). (Tr. 41, PAGEID #: 71 (noting Plaintiff's service in the Navy and National Guard)). Plaintiff also had a carpet-installing business in December 2012, which he says "fell apart" due to his depression. (Tr. 43–44, PAGEID #: 73–74).

During the hearing, the ALJ noted Dr. Schwartz's opinion that Plaintiff is unable to work

(Tr. 49, PAGEID #: 79 (citing Tr. 1602, PAGEID #: at 1641; Tr. 1605, PAGEID #: 1644)); however, he found it "conclusionary" with "no specific limitation." (Tr. 53, PAGEID #: 83). The relevant exchange is as follows:

> ALJ: Ms. Hinzman, even if I were to accept Dr. Schwartz's form … that doesn't impress me as though that would necessarily cause work preclusive limitations. It seems as though the only areas that are marked … have to do with social activities and boy, there's a lot of no limitations mentioned. And when we talk about the big four areas of functional limitations, it says moderate activities of daily living, moderate concentration persistence, one or two decompensation, and marked social. So I'm just trying to figure out, even if I accept these limitations, the only thing—and I don't understand what—on the last page, he's got a checkbox , where he doesn't believe your client is capable of working eight hours a day, five days a week. And when asked to be explained, I don't understand what that word is.
>
> ATTY: None.
>
> ALJ: [N]one. So there is—oh, okay. So I've got that conclusionary opinion, but no specific limitation. I don't have any doctor that I saw anywhere on the record, suggesting any physical limitations. Did I—is that anywhere in the record?
>
> ATTY: No, you're correct, Your Honor.

(Tr. 53, PAGEID #: 83).

The ALJ asked Plaintiff to reconcile Dr. Schwartz's opinion that he was unable to work with his activities of daily living, which include doing yardwork, teaching his nephew how to shoot, driving, and watching his one-year-old granddaughter for an hour one day a week. (Tr. 49–50, PAGEID #: 79–80; Tr. 58, PAGEID #: 88; Tr. 47, PAGEID #: 77; *see also* Tr. 47–48, PAGEID # 77–78 (the ALJ discussing Plaintiff's fishing, "arranging a hayride," and "helping his neighbor cut hay")). The ALJ also noted that Plaintiff attended a Navy reunion out of town and enjoys time with his children. (Tr. 57, PAGEID #: 87). Plaintiff explained that he has "good days" and "bad days." (Tr. 51, PAGEID #: 81).

Plaintiff stated that, on a good day, he can think clearly, has less jerking movements,

5

works in the garden, mows the yard, and helps his neighbor with his large farm, riding a four-wheeler and hooking and unhooking wagons. (*Id.*). Conversely, Plaintiff explained that, on a bad day, he "jerk[s]" and "can't focus." (*Id.*). Plaintiff testified that he has more bad days than good days. (Tr. 55, PAGEID #: 85). Plaintiff lives in a trailer with his girlfriend, who manages his finances, including his monthly VA payments. (Tr. 58, PAGEID #: 88; Tr. 63, PAGEID #: 93).

Cheryl R. Hoiseth, a Vocational Expert ("VE"), also testified at the hearing. (Tr. 64, PAGEID #: 94). The VE testified that an individual with Plaintiff's residual functional capacity ("RFC") could not perform Plaintiff's past relevant work as a carpet installer. (Tr. 67, PAGEID #: 97). However, the VE opined that, considering the ALJ's restrictions, there would be other jobs the individual could perform, such as janitor and cleaner. (*Id.*).

**C. Relevant Portions of the ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and he has not engaged in substantial gainful activity since December 12, 2012, the alleged onset date. (Tr. 14, PAGEID #: 44). The ALJ concluded that Plaintiff had the following severe impairments: PTSD, anxiety disorder, mood disorder, tic disorder not otherwise specified, and orofacial dyskinesia, none of which met or equaled the requirements of any section of the Listing of Impairments. (Tr. 14, PAGEID #: 44).

The ALJ found that Plaintiff has:

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Can perform fine and gross manipulation frequently, but not constantly, and is unable to perform precision manipulation; is limited to working in non-hazardous environments, i.e., no driving or operating moving machinery at work; can never climb ladders, ropes, or scaffolds; can never work at unprotected heights or around exposed flames or unguarded large bodies of water; should avoid concentrated exposure to

6

unguarded hazardous machinery such as a punch press and large robotic machinery; due to his unusual speech patterns, he is unable to perform work requiring complex or frequent verbal communication either in person or over the telephone; can perform simple, routine, and repetitive tasks involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment; with no direct public service, in person or over the telephone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to his primary job duties; and can tolerate brief and superficial interaction with coworkers and supervisors as is common in unskilled work, but is not to perform teamwork or tandem tasks.

(Tr. 18, PAGEID #: 48).

The ALJ noted that Dr. Schwartz's opinion that Plaintiff is unable work, but he assigned it "no weight" for several reasons. (Tr. 20, PAGEID #: 50). First, the ALJ found that Dr. Schwartz's opinion is a "conclusion not supported by an analysis of [Plaintiff's] functional abilities." (*Id.*). Second, he found that "the medical evidence, particularly Dr. Schwartz's mental status examinations that repeatedly show normal findings, do not support such an extreme finding." (*Id.*). The ALJ also considered, *inter alia*, the VA's findings but determined that "the overall evidence does not support finding that the claimant has more limitations than have already been provided for in his [RFC]." (Tr. 22, PAGEID #: 52).

According to the ALJ, considering Plaintiff's age, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24, PAGEID #: 54). Based upon the foregoing, the ALJ concluded that Plaintiff has not been under a disability since December 15, 2012, and was not entitled to benefits. (Tr. 24–25, PAGEID #: 54–55).

## II. LEGAL STANDARD

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff sets forth two statements of error. First, he argues that "[t]he ALJ failed to properly consider and weigh" Dr. Schwartz's opinion. (Doc. 10 at 8). Second, Plaintiff asserts the ALJ erred in failing to properly consider and weigh his VA rating decisions. (*Id*. at 11). The Court considers Plaintiff's arguments in turn.

### A. Dr. Schwartz's Opinion

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

In this case, the ALJ first addressed Dr. Schwartz's November 6, 2013 and February 10, 2014 letters stating that Plaintiff is unable to work. He gave them no weight because they opine on a matter reserved to the Commissioner, reach a conclusion unsupported by Plaintiff's functional abilities, and are unsupported by the medical evidence. (Tr. 20, PAGEID #: 50 (finding the letters unsupported by, *inter alia*, Dr. Schwartz's mental status examinations, which show normal findings repeatedly)). The ALJ cited Dr. Schwartz's findings that Plaintiff: did not display any involuntary movements (Tr. 19, PAGEID #: 49 (citing records from January 2014, February 2014, March 2014, May 2014, and July 2014)); had mental-status exams within normal limits (*id*. (citing records from January 2014, February 2014, March 2014, May 2014, and July 2014)), including speech without any impediments (*id*. (citing records from January 2014, February 2014, March 2014, and May 2014)); and denied anxiety-related symptoms (*id*.; (citing records from May 2014)) and side effects from his medication (*id*.; (citing records from July 2014)). (*See also* Tr. 20, PAGEID #: 50 (stating that Plaintiff's "treating physician, Dr. Schwartz, repeatedly noted no involuntary movements")). The ALJ also referred to Dr.

9

Schwartz's note that Plaintiff "goes to Wal-Mart with his girlfriend and … while he becomes anxious at times, he does not leave and is able to get the shopping completed." (Tr. 19, PAGEID #: 49).

The ALJ likewise considered Dr. Schwartz's January 26, 2015 mental impairment questionnaire. (Tr. 20, PAGEID #: 50). After setting forth Dr. Schwartz's questionnaire answers in detail, the ALJ again gave Dr. Schwartz's opinion no weight based on his determination that the record fails to support the "finding that the claimant has marked limitations in social functioning, an inability to get along with others, or any displays of inappropriate behavior." (Tr. 20–21, PAGEID #: 50–51). In his discussion of Plaintiff's social functioning, the ALJ cited Plaintiff's testimony that he has a girlfriend (Tr. 16, PAGEID #: 46), and function report answers that he does not have any problems getting along with others, including authority figures, and spends time with family. (Tr. 289, PAGEID #: 323; Tr. 291, PAGEID #: 325; Tr. 299, PAGEID #: 333). The ALJ also noted that "[d]espite the claimant's speech difficulties, he was able to testify at the hearing." (Tr. 20, PAGEID #: 50).

In the present case, the ALJ's explanation for assigning no weight to Dr. Schwartz's opinions constituted sufficient detail to satisfy the good-reasons requirement. Considered in context, it is sufficiently clear that the ALJ assigned no weight to Dr. Schwartz's opinions based on his determination that they were unsupported by his treatment notes and the objective evidence as a whole. In other words, the ALJ found that, despite the treating relationship, Dr. Schwartz's opinions lacked sufficient evidence to support their severity. For these reasons, it was not error for the ALJ to refuse to assign weight to them.

### B. Plaintiff's VA Rating Decisions

Plaintiff next claims the ALJ erred in failing to consider and weigh properly his VA rating decisions. Although the ALJ must consider Plaintiff's VA rating decisions, they are non-binding and are not entitled to any specific weight. *See Briskey v. Astrue*, No. 1:09-cv-2705, 2011 WL 672553, at *3–4 (N.D. Ohio Feb. 15, 2011); *see also Fuller v. Astrue*, No. 3:10-cv-330, 2011 WL 2039303, at * 8 (S.D. Ohio Apr. 14, 2011) (citing 20 C.F.R. § 404.1504 (stating that the Commissioner is not bound by findings of another governmental agency concerning whether an individual is disabled)). However, the ALJ is required to provide reasons for the weight assigned. *See Briskey*, 2011 WL 672553, at *4 (citing *Proctor v. Comm'r of Soc. Sec.*, No. 1:09-cv-127, 2010 WL 4026083, at *9 (S.D. Ohio Sept. 17, 2010)); Social Security Ruling 06-03p.

In this case, the ALJ stated the following on this issue:

> The claimant was notified on December 11, 2013 that the [VA] had determined that he was entitled to a 50% rating due to service connected adjustment disorder with depression and anxiety effective January 29, 2013. He was also assigned a 100% rating due to a hospitalization of over 21 days as of February 11, 2013 and returned to a 50% rating as of April 1, 2013. The claimant was again notified on May 6, 2014 that the VA had made a decision on his claim for benefits and that he had been awarded $2,858.24 in benefits as of February 1, 2014. It was noted that the claimant had received a 50% rating for PTSD, formerly adjustment disorder with depression and anxiety, effective January 29, 2013, which went up to 100% effective February 11, 2013, which went back to down to 50% effective April 1, 2013, and then back to 100% effective January 24, 2014. At the hearing, the claimant confirmed that he had received 100% benefits when he was in the hospital. I have considered this finding by the VA, but note that the overall evidence does not support finding that the claimant has more limitations than have already been provided for in his residual functional capacity.

(Tr. 22, PAGEID #: 52) (internal citations omitted). Although the ALJ did not articulate the specific weight he assigned to Plaintiff's VA rating decisions, the decision makes clear that he

considered them and determined that the totality of the evidence did not support finding more limitations than those specified in the RFC. (*See id*.).

Based on the foregoing, this case is distinct from *Treichel v. Colvin*, No. 16-cv-10331, 2016 WL 4036863, at *2 (E.D. Mich. July 28, 2016), the decision on which Plaintiff relies. (Doc. 12). There, the Court found that the ALJ "erred by failing to acknowledge and consider the VA's … rating decision…." *Id*. (finding that the ALJ appeared to be "unaware" of the relevant rating decision). Because the ALJ acknowledged and considered the relevant decisions and explained his rationale for finding the limitations in the RFC, the Court finds no error.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report

and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: June 29, 2017 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE