# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PAUL EVERETT CUSTER,**

    **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Case No. 2:16-cv-788
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Objections (ECF No. 14) to the Magistrate Judge's Report and Recommendation. (ECF No. 13.) For the reasons that follow, the Court **SUSTAINS** Plaintiff's Objections and **REMANDS** the case to the Commissioner of Social Security.

## I.

Plaintiff, Paul Everett Custer ("Custer"), filed an application with the Commissioner of Social Security ("Commissioner") for Disability Insurance Benefits and Supplemental Security Income ("SSI") in March 2013, alleging disability since December 15, 2012, due to posttraumatic stress disorder ("PTSD"), anxiety disorder, tic disorder not otherwise specified and orofacial dyskinesia. (R. at 1436, 1453, 1463.)

On March 25, 2015, following a hearing, an Administrative Law Judge ("ALJ") upheld an administrative denial of Custer's claim for Disability Insurance Benefits and SSI. The ALJ concluded that Custer has severe impairments including "posttraumatic stress disorder, anxiety disorder, mood disorder, tic disorder not otherwise specified, and orofacial dyskinesia," but that these do not meet or equal a listed impairment. (20 C.F.R. pt. 404, subpart P, App. 1.) The ALJ

found that Custer had the residual functional capacity to perform the exertional requirements of a full range of work at all exertional levels subject to nonexertional limitations, but that Custer "is unable to perform any past relevant work." (R. at 18, 23.)

The Appeals Council denied review on June 15, 2016. (Pl.'s Statement of Errors ("SOE") at 2, ECF No. 10.) Custer filed his statement of specific errors on December 22, 2016 (ECF No. 10), to which the Commissioner responded on February 1, 2017. (ECF No. 11.) On June 29, 2017, the Magistrate Judge recommended overruling Custers' statement of specific errors. (ECF. No. 13.) Custer filed a timely objection. (ECF No. 14.)

## II.

This Court reviews a final decision by the Commissioner pursuant to 42 U.S.C. § 405(g). In cases where a Magistrate Judge has issued a Report and Recommendation, and a party has properly filed objections to it, the district court conducts a *de novo* review of those parts of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1).

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### III.

Custer asserts that the ALJ erred by not according the opinions and conclusions of his treating physician, Dr. Joel Schwartz, who treated Custer over the course of several years, sufficient weight. (ECF No. 14 at 2.) Specifically, Custer points to the fact that in reaching his conclusion, the ALJ accorded "no weight" to the assessment of Dr. Schwartz. The ALJ reasoned that "the record does not document finding that the claimant has marked limitations in social functioning, an inability to get along with others, or any displays of inappropriate behavior. (R. at 21.)

Upon *de novo* review, the Court finds that as Plaintiff's treating physician, Dr. Schwartz's opinion should be given some weight, at least as it appears to be supported by Custer's medical records.

It is well settled that "the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2)). The ALJ gives deference to the opinions of a treating source "since these sources are likely to be the

3

medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). A physician is a treating source if she has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." *Blakley*, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502). An ALJ's failure to follow the procedural rules for assigning weight to the opinions of treating sources and giving good reasons for the weight assigned constitutes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record. *Id.* at 403.

Custer claims he has suffered from disabling depression, anxiety, and PTSD, all of which manifest themselves, into physical symptoms that include involuntary tics and spasms since December 15, 2012. (R. at 43–46.) In a January 26, 2015 medical source statement, Dr. Schwartz opined that Custer had marked difficulties in maintaining social functioning. (R. at 323–25.) Dr. Schwartz further opined that Custer had a residual disease process that had resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. (R. at 326.) The ALJ rejected Dr. Schwartz's opinion completely, finding the record replete of documentation evidencing Custer suffers from marked limitations in social functioning. (R. at 21.) The ALJ did not

elaborate on his finding and the Court disagrees. In a similarly nondescriptive manner, the ALJ rejected all other professional opinions that supported Dr. Schwatz's opinion. (R. at 21–22.)

For example, the ALJ rejected the opinion of Ronald Jeffcott, Ph.D., who described Custer as "unemployable" in a VA Disability Questionnaire, reasoning that his opinion was "inconsistent with the overall evidence." (R. at 21, 1453 ) The ALJ rejected the opinion of Dr. Liza Schaffner, who wrote on May 31, 2013, that Custer would be unable to work for the next sixty days due to anxiety and depression. (R. at 21, 1596.) Again, the ALJ found this opinion "inconsistent with the overall evidence." (R. at 21.) The ALJ then rejected the opinion of Ray Stathers, LISW, who similarly opined on April 26, 2013, that Custer was unable to work for sixty days due to his condition. (R. at 1594.) The ALJ justified giving "no weight" to Mr. Stathers' opinion in part because his opinion was "clearly based on the claimant's subjective complaints." (R. at 21.) Mr. Strathers' wrote, however, that Custer was prevented from working for an additional sixty days because he "continues to undergo care for muscle spasm condition affecting his diaphragm and ability to speak. Veteran experienced uncontrolled interruption of his speech and involuntary muscle movements of underdetermined origin." (R. at 1594.) As discussed below, Custer's medical record consistently documents Custer's physical tics and spasms. Finally, the ALJ also rejected the Department of Veterans Affairs ("VA") determination that Custer was entitled to a fifty percent disability rating due to service connected adjustment disorder with depression and anxiety, in January 2013, a one-hundred percent disability rating in February 2013 as a result of his hospitalizations, and then a fifty percent rating as of April 2013. (R. at 22, 1156–165.) Once again, the ALJ offered no reasoning for his rejection, only stating that "the overall evidence does not support finding that the claimant has more limitations than have already been provided for in his residual functional capacity." (R. at 22.)

Dr. Schwartz opined that Custer suffered from marked limitations in social functioning and wrote that Custer would have difficulty working at a regular job on a sustained basis due to Custer's "vocal tic" and "mood instability." (R. at 325, 329.) The record supports his opinion, particularly in regard to Custer's ongoing treatment for PTSD. PTSD is "an anxiety disorder caused by exposure to an intensely traumatic event." *Monroe v. Barnhart*, 372 F. Supp. 2d 976, 978 n.5 (S.D. Tex. 2005). Custer served in the Navy and then the Army National Guard from 1984 until 1993. During his time in service, he experienced an intensely traumatic event; he was onboard the USS Iowa when it exploded, resulting in the death of 47 sailors. (R. at 898.) On April 3, 2014, Ronald Jeffcott, Ph.D. noted in a VA Disability Questionnaire that, "[v]eteran's mother gave credible information that veteran may have been suffering from PTSD soon after two incidents in the Navy, most notable, the incident on USS IOWA." (R. at 1453.) Moreover, he concluded "[v]eteran's claim that he has had PTSD is found today to be credible based upon corroborative information from his family and with information from his most recent psychiatric/medical records, to include acute hospitalizations." (*Id.*)

Although Dr. Schwartz's January 26, 2015, opinion does not offer a detailed accompanying description, as a treating physician, Dr. Schwartz had the opportunity to review Custer's medical records, which support his opinion. A review of the medical record as a whole reveals that Custer was consistently observed to exhibit spasms and voice changes. (R. at 899, 1452.) In a discharge summary from July 17, 2013, it is noted that Custer was "admitted with PTSD/depression/anxiety who developed tremor/voice changes after starting sertraline. SSRI has been stopped without improvement." (R. at 1452.) Upon changing his medication, the treatment notes reflected that Custer experienced "features of mania, multiple psych admissions this year." (*Id.*) Custer continued to experience tics and spasms. (R. at 342, 343.) Medical

6

records show that Custer's medication has been continually changed, with temporary reprieves where he experienced improvements (R. at 1435) and then other times when he suffered from worsened symptoms. (R. at 46, 51–52.) Custer testified that he experiences good days with lessened symptoms and bad days with heightened symptoms. (R. at 48.) He further testified at the hearing that he currently takes three Clonazepam a day, and that if he is "in nervous places," he takes an extra. Treatment notes state that he is "considered poor for full recovery." (R. at 1454.)

Custer was admitted into inpatient care February 1, 2013 through February 6, 2013, February 11, 2013 through February 13, 2013, and February 26, 2013 through March 22, 2013. (R. at 418–27.) The hospital records consistently note that Custer exhibited physical tics and spasms as well as a history of anxiety and depression. (R. at 857, 870, 871, 876, 897, 899, 919.) Based on the record as a whole, the Court disagrees with the ALJ's conclusion that the opinion of Dr. Schwartz was without support.

Accordingly, the Court concludes that the ALJ erred in failing to accord controlling weight, or any, to the medical opinion of treating physician Dr. Schwartz.

### IV.

Upon *de novo* review, in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), the Court **SUSTAINS** Plaintiff's Objections (ECF No. 20) to the Report and Recommendation insofar as they relate to the ALJ's development of the record. The case is hereby **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

9-28-2017
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT CHIEF JUDGE**